UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                             :

UNITED STATES OF AMERICA        :

            -v.-                      :

                                        :      13 CR 190 (VEC)

JOHN JOHNSON,                    :

           Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF DEFENDANT JOHN JOHNSON**




Joshua D. Franklin
PESTOTNIK LLP
501 West Broadway, Suite 1025
San Diego, California 92101
(619) 365-9210
Counsel for Defendant John Johnson
(admitted *pro hac vice*)

April 16, 2015

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................................. i

Table of Authorities ........................................................................................................................ ii

Table of Exhibits ........................................................................................................................... iii

I.     INTRODUCTION ...............................................................................................................1

II.    CONSIDERATION OF 18 U.S.C. § 3553(a) SENTENCING FACTORS...................2

       A.  History and Characteristics of John Johnson ...........................................................3

       B.  The Nature and Circumstances of the Offense .........................................................4

III.   THE ADVISORY SENTENCING GUIDELINES .......................................................5

IV.   MR. JOHNSON'S SUBSTANTIAL ASSISTANCE THE GOVERNMENT ..............6

       A.  The Significance and Usefulness of Mr. Johnson's Assistance...............................7

       B.  The Truthfulness, Completeness, and Reliability of Mr. Johnson's Information

           and Testimony..........................................................................................................8

       C.  The Nature and Extent of Mr. Johnson's Assistance...............................................9

       D.  The Timeliness of Mr. Johnson's Assistance .........................................................10

V.    A SENTENCE OF PROBATION FULFILLS THE SENTENCING PURPOSES

       DIRECTED BY 18 U.S.C. § 3553(a)(2) .......................................................................10

VI.   CONCLUSION.................................................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**

*Gall v. United States*
  552 U.S. 38 (2007) .................................................................................................................. 5

*United States v. Booker*
  543 U.S. 220 (2005) ................................................................................................................ 5

**STATUTES**

18 U.S.C. § 3553 ........................................................................................................... *passim*

**UNITED STATES SENTENCING GUIDELINES**

§ 5K1.1 ..................................................................................................................... 6-8

## TABLE OF EXHIBITS

| Number | Description |
|---|---|
| 1. | Letter of Support for John Johnson from The Honorable Bruce A. Plotkin |
| 2. | Letter of Support for John Johnson from Laura Ladd |
| 3. | Letter of Support for John Johnson from Jeffrey Straayer |
| 4. | Letter of Support for John Johnson from Holly Hensey |
| 5. | Letter of Support for John Johnson from Dawn Lundell |

## I.     INTRODUCTION

Defendant John Johnson awaits sentencing for his violation of insider trading laws. Through this memorandum, Mr. Johnson asks the Court to look beyond the formulaic numbers and criteria contained in the Presentence Report and consider his true character, the facts and circumstances that contributed to his offense, and the substantial assistance that he has provided to the government since 2012.  Only with this complete perspective can the Court fashion an appropriate and just sentence.

The Court should first understand that Mr. Johnson is a devoted father of four and that it was desperation, not greed, that drove him to trade on inside information in July 2008.  A few months earlier, he accepted the terms of a divorce settlement that called for him to pay a mortgage payment, maintenance, and child support totaling approximately $12,000 per month. Then, just weeks after signing the divorce settlement, Mr. Johnson lost his job as an analyst for several mutual funds with The Boston Company.  He had no job and, in the midst of the global financial crisis of 2008, the prospect of finding another opportunity in the financial sector was quite grim.  In the face of these challenging circumstances, Mr. Johnson received a phone call from Matthew Teeple, a hedge fund analyst whom Mr. Johnson had known for years.

Mr. Teeple informed Mr. Johnson that Foundry Networks, a manufacturer of Ethernet switches and routers, was about to be acquired by Brocade Communications Systems, a company specializing in data and networking products.  Based on Mr. Teeple's information, Mr. Johnson made the poor decision to purchase shares and options of Foundry, and ultimately realized a profit of approximately $135,000.  It was the first and only time that he traded on inside information, despite having had numerous opportunities to do so in the past.  Defendant John

Johnson's misguided decision to trade on inside information in July 2008 was out of character and should neither define his life nor conclusively seal his fate.

Mr. Johnson has since admitted his wrongdoing and cooperated fully with the government. From the first time that he was contacted by agents in September 2012, he has accepted responsibility for his actions and has done everything asked of him. As part of his cooperation agreement with the government, Mr. Johnson has attended multiple proffer interviews, produced numerous documents, and has even testified as the government's lead witness in the recent trial of David Riley. As a result of Mr. Johnson's substantial assistance, the government has secured insider trading convictions against Mr. Teeple and Mr. Riley, two principal targets of its investigation.

Thus, Mr. Johnson has done everything in his power to make amends for his misconduct. In light of this and other information presented in this memorandum, Mr. Johnson respectfully requests that the Court afford him the privilege of probation. Imposing such a sentence would be appropriate and in accord with the directives set forth in 18 U.S.C. § 3553(a).

## II.  CONSIDERATION OF 18 U.S.C. § 3553(a) SENTENCING FACTORS

The Court must impose a sentence sufficient, but not greater than necessary, to (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; and (5) protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). To that end, Section 3553(a) requires the Court to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). These factors reveal that Mr. Johnson is a good man who made a poor decision at an extremely challenging point in his life. When considered in conjunction with all that Mr. Johnson has done to atone for his

conduct, including his substantial assistance to the government, these and other sentencing considerations discussed below all weigh heavily in favor of a sentence to probation.

      **A.**      **History and Characteristics of John Johnson.**

Mr. Johnson is 48 years old and has never before been convicted of any crime. He was born in Denver, Colorado and raised in the nearby suburbs as the youngest of four brothers, one of whom is now deceased. Today, Mr. Johnson is a devoted father to four children of his own. After a contentious divorce that was finalized in May 2008, he and his ex-wife now share custody of their three daughters (ages 13, 16, and 18) and one son (age 15). Mr. Johnson has always been the principal financial provider for his children, both before and after the divorce.

As set forth in the attached letters of support,[1] Mr. Johnson is extraordinarily committed to his children. He regularly attends and participates in his children's activities, including horseback riding shows and school field trips, even when the events are hundreds of miles away. Mr. Johnson also served on the board of directors for his children's school for several years before being forced to resign due to the publicity of this case. Mr. Johnson's primary focus is, and always has been, his children.

In his professional life, Mr. Johnson has worked in the financial industry for a number of years, primarily as an analyst. More recently, he served as the Chief Investment Officer for Wyoming Retirement Systems. After initially pleading guilty in this case, however, Mr. Johnson was forced to resign from that position. He now works as a consultant for Centennial Brands, a holding company for several natural food brands, earning a fraction of his previous salary.[2]

---

[1] Five individuals have submitted letters of support on behalf of Mr. Johnson. These letters are attached as Exhibits 1-5 to this Memorandum. The letters are addressed to the Honorable John F. Keenan because, at the time the letters were prepared, Mr. Johnson's case was assigned to Judge Keenan.

[2] Mr. Johnson has worked for Centennial Brands since November of 2013 and currently earns a salary of $2,000 per month.

Mr. Johnson currently lives with and cares for his 85-year-old father, Robert, who suffers from moderate Alzheimer's disease.[3] The effects of the illness are significant and prevent Robert from safely living alone. Because Robert wishes to remain in his own home, and Mr. Johnson's two living brothers reside in Texas and California, the only solution is for Mr. Johnson to live with his father. Each day, Mr. Johnson assists his father by preparing meals, overseeing his prescription medicine regimen, accompanying him to the grocery store and other errands, and driving him to doctor's appointments.

Notwithstanding the humbling consequences already experienced as a result of his unlawful conduct, and the more serious consequences to which he is now exposed, Mr. Johnson continues to devote most of his energy and attention to his four children and his father.

**B.    The Nature and Circumstances of the Offense.**

Mr. Johnson stands before the Court having committed the offense of insider trading. On July 18, 2008, Matthew Teeple spoke to Mr. Johnson over the phone and provided him with nonpublic material information concerning the then-imminent acquisition of Foundry Networks, Inc. ("Foundry") by Brocade Communications Systems, Inc. ("Brocade"). Shortly after receiving this information, Mr. Johnson acquired shares and options of Foundry with the expectation that its stock price would increase after news of the acquisition went public. Mr. Johnson executed trades from his own personal account as well as custodial accounts that he managed on behalf of his four children. As predicted by Mr. Teeple, Brocade announced on July 21, 2008 that it was acquiring Foundry, just days after Mr. Johnson executed his trades. As a result, Mr. Johnson realized a total profit of approximately $135,000, before taxes, which he is prepared to forfeit as part of his sentence.

---

[3] Mr. Johnson's mother is deceased.

Apart from the conduct itself, the Court should consider the circumstances that contributed to Mr. Johnson's ill-advised decision to purchase shares of Foundry based on the information he received from Mr. Teeple. Despite having had numerous opportunities to trade on inside information in the past, this was the first and only time that he personally traded on or profited from such information. It was a one-time lapse in judgment at a point when Mr. Johnson felt completely hopeless.

A few months earlier, in May 2008, Mr. Johnson finalized a divorce settlement that called for him to pay a mortgage payment, maintenance, and child support totaling roughly $12,000 per month. Then, just a few weeks later, Mr. Johnson lost his job as an analyst with The Boston Company, without warning, due to the poor performance of his stock recommendations. At the time, in the midst of the global financial crisis of 2008, the prospect of finding other opportunities in the financial sector was bleak, at best. Indeed, the financial markets were reeling in the wake of Bear Stearns' collapse, at the peak of the subprime mortgage crisis, and in anticipation of Lehman Brothers' imminent failure. Mr. Johnson had no job, little hope of finding one, and four children to support. It was under these overwhelming circumstances that Mr. Johnson traded on inside information. His conduct was motivated by desperation, not greed.

### III.  THE ADVISORY SENTENCING GUIDELINES

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines are no longer mandatory, but rather advisory. *See id*. at 259. Yet this Court must still calculate the applicable guidelines range as the starting point in its sentencing analysis. *Gall v. United States*, 552 U.S. 38, 49 (2007).

Mr. Johnson has pled guilty to one count of securities fraud and one count of conspiracy to commit securities fraud. In light of Mr. Johnson's lack of criminal history, acceptance of

responsibility, and the loss amount, the Presentence Report correctly calculates Mr. Johnson's offense level as 13, which translates into a guideline range of 12 to 18 months. Of course, this offense level does not take into account the exceptional circumstances contributing to Mr. Johnson's offense, his role as sole caregiver for his ill father and principal provider for his four children, or his extensive cooperation and assistance to the government in prosecuting Matthew Teeple and David Riley. *See*, *infra*, at § IV.

For the reasons stated herein and in Section IV below, the Court should depart from the advisory Sentencing Guidelines and impose a sentence of probation.

### IV.    MR. JOHNSON'S SUBSTANTIAL ASSISTANCE TO THE GOVERNMENT

As a direct result of Mr. Johnson's cooperation and testimony, the government obtained insider trading convictions against two of the central targets of its investigation – Matthew Teeple and David Riley. The government will accordingly be submitting a letter, pursuant to Section 5K1.1 of the Federal Sentencing Guidelines, advising the Court of its own assessment of Mr. Johnson's assistance. The Court should afford great weight to the government's viewpoint, as well as the Court's own observations, and conclude that Mr. Johnson's assistance justifies a significant departure from the Sentencing Guidelines.

Section 5K1.1 of the Federal Sentencing Guidelines directs the Court to state its reasons for any sentencing reduction and provides that the Court may consider the following five nonexclusive factors in making such a determination:

> (1)    the Court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3)    the nature and extent of the defendant's assistance;

      (4)      any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

      (5)      the timeliness of the defendant's assistance.

USSG § 5K1.1(a). As applied here, four of the five factors weigh heavily in favor of a reduced sentence for Mr. Johnson.[4]

### A. The Significance and Usefulness of Mr. Johnson's Assistance.

Mr. Johnson's assistance was vital to the government's prosecution of Matthew Teeple, a former analyst for hedge fund Artis Capital Management, L.P. Most notably, Mr. Johnson confirmed that Mr. Teeple disclosed highly sensitive and material information about Foundry, including the details of its July 21, 2008 acquisition by Brocade, before it became public. Mr. Johnson provided thorough accounts of conversations he had with Mr. Teeple over the course of several years. He also produced original notebooks containing contemporaneous notes from certain conversations with Teeple and others. All of Mr. Johnson's information was credible and much of it corroborated by other evidence. As a result, Mr. Teeple agreed to plead guilty to conspiracy to commit securities fraud for his role in obtaining more than $36 million in illegal gains for his hedge fund.

Mr. Johnson's assistance was also instrumental in the government's prosecution of David Riley, Foundry's former Chief Information Officer. Indeed, in the recent jury trial of Mr. Riley over which this Court presided, Mr. Johnson testified as the government's lead witness. Although Mr. Johnson never interacted with Mr. Riley directly, he bolstered the government's case by acknowledging his own unlawful trades and corroborating other evidence relevant to whether Mr. Riley disclosed inside information concerning Foundry to Mr. Teeple.

---

[4] Mr. Johnson does not contend that he or his family have been put at risk as a result of his assistance.

Mr. Johnson testified that he received specific details about the terms of Foundry's acquisition and that, based on comments by Mr. Teeple and his own experience, he believed the information came from a high-level source at Foundry. *See United States v. David Riley,* Case No. 13 CR 339 (VEC), Sep. 9, 2014 Tr. at 100:9 – 101:23. Mr. Johnson also recalled Mr. Teeple stating that he had previously worked with the Foundry source, among others. *See id.* at 90:14 – 90:19. This testimony provided the government with important evidence substantiating (1) the nature of the information disclosed; (2) the essential link between Mr. Teeple and Mr. Riley; and (3) the fact that third parties traded on the improperly disclosed information. A jury ultimately found Mr. Riley guilty of securities fraud and conspiracy to commit securities fraud. Thus, Mr. Johnson's cooperation and assistance played an undeniable role in securing convictions of Messrs. Teeple and Riley, two principal targets whom the government considered far more culpable than Mr. Johnson.

This Court directly observed Mr. Johnson testify as the government's first witness in the trial of Mr. Riley. The Court is, therefore, in an excellent position to evaluate the impact of Mr. Johnson's assistance, particularly as it relates to David Riley. The Court should also give considerable weight to the evaluation set forth in the government's Section 5K1.1 letter. That assessment provides a more complete picture of Mr. Johnson's assistance, much of which occurred before the trial of Mr. Riley. When the Court considers the full context of what Mr. Johnson has done for government, including from the Court's own perspective, it should easily appreciate the importance and impact of his assistance.

### B. The Truthfulness, Completeness, and Reliability of Mr. Johnson's Information and Testimony.

From the first time that government agents contacted Mr. Johnson at his home in September 2012 until his trial testimony in September 2014, he has been truthful, complete, and

consistent.  And, given that Mr. Johnson accepted responsibility for his own misconduct almost immediately, he has proven to be a credible witness for the government.  Nothing has come to light to suggest in any way that Mr. Johnson misrepresented or concealed information, minimized his own culpability, or otherwise obstructed the government's investigation.  On the contrary, the government will confirm that Mr. Johnson has been a valuable and reliable asset.

### C. The Nature and Extent of Mr. Johnson's Assistance.

Over the course of roughly two years, Mr. Johnson did everything that was asked of him.  At the government's request, Mr. Johnson traveled from Colorado to New York several times to attend proffer interviews, often times on short notice and always at Mr. Johnson's expense.  The proffer interviews were extensive.  Mr. Johnson provided the government with detailed information about specific transactions and also valuable background information about the inner workings of hedge funds, including the manner in which funds obtain and analyze various discrete types of inside information.  Apart from Mr. Johnson's in-person proffer interviews, he frequently assisted government agents and attorneys by phone in connection with a wide variety of topics, including matters relevant to other high-profile investigations.  Much of Mr. Johnson's insight was akin to that of an expert and provided value to the government far beyond the prosecution of Messrs. Teeple and Riley.

Mr. Johnson also produced all email correspondence and other documents requested by the government.  Early on, for example, Mr. Johnson provided government agents with several volumes of original notebooks that he had maintained as a mutual fund analyst.  These notebooks contained detailed and sometimes encrypted notes about information Mr. Johnson received concerning various technology companies, including information from Matthew Teeple.  The government introduced excerpts of Mr. Johnson's notebooks at the trial of David Riley.

And finally, after a significant amount of preparation with government prosecutors, Mr. Johnson testified truthfully and convincingly in the recent trial against David Riley – *United States v. David Riley*, Case No. 13-CR-339-1 (VEC). As the Court is aware, Mr. Johnson's testimony was critical to the government's case. In fact, in a trial that spanned four weeks, the government chose to call Mr. Johnson as the first witness in its case-in-chief. This fact alone speaks volumes and underscores the importance of Mr. Johnson's testimony.

Through his testimony and other actions, Mr. Johnson has provided first-rate assistance to the government for approximately two years. He has done literally everything asked of him, which has allowed the government to successfully prosecute two of its primary targets. Mr. Johnson's assistance has been equal to or greater than that of many others who, under similar circumstances, have pled guilty to insider trading, cooperated with the same United States Attorney, and received sentences to probation or time served. Therefore, to avoid an unwarranted sentencing disparity among similarly situated cooperating witnesses, the Court should sentence Mr. Johnson to probation. *See* 18 U.S.C. § 3553(a)(6).

### D. The Timeliness of Mr. Johnson's Assistance.

Government agents first contacted Mr. Johnson at his home in Colorado on September 27, 2012. Mr. Johnson was truthful and cooperative during that very first interview, even though the answers established his own culpability. After obtaining counsel the following day, Mr. Johnson agreed to attend a proffer interview in New York and began the process of assisting the government. In other words, Mr. Johnson agreed to cooperate at his first opportunity.

### V. A SENTENCE OF PROBATION FULFILLS THE SENTENCING PURPOSES DIRECTED BY 18 U.S.C. § 3553(a)(2).

If the Court sentences Mr. Johnson to probation, it will honor the applicable sentencing purposes directed by 18 U.S.C. § 3553(a)(2). Specifically, a sentence to probation will reflect

the seriousness of Mr. Johnson's offense, promote respect for the law, and provide just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).  On the other hand, sentencing Mr. Johnson to any jail time would unduly minimize the value of his cooperation and impose a punishment "greater than necessary" to accomplish the purposes of Section 3553(a).  18 U.S.C. § 3553(a).

Perhaps most significantly, Mr. Johnson will be a convicted felon, whether or not the Court imposes any jail time as part of its sentence.  Apart from the stigma and restrictions associated with that classification, Mr. Johnson will be unable to obtain a position nearly as reputable or lucrative as those that he previously held.  Nor will he retain any profits yielded from his unlawful trading activity, as the Court will require him to forfeit any ill-gotten gains.  These consequences are significant and sufficiently punitive given that Mr. Johnson has no criminal history, immediately accepted responsibility for his actions, and provided substantial assistance to the government for two years.

For similar reasons, a sentence to probation will provide adequate deterrence to criminal conduct.  *See* 18 U.S.C. § 3553(a)(2)(B).  Given all that Mr. Johnson has lost already as a result of his unlawful trades, as well as the consequences of the pending SEC enforcement action that he is in the process of resolving, any would-be insider trader should be sufficiently deterred, regardless of the sentence.  In other words, a sentence to probation will in no way incentivize insider trading.  Accordingly, the Court need not incarcerate Mr. Johnson to "send a message."

Finally, the need to protect the public from further crimes of Mr. Johnson is essentially nonexistent.  *See* 18 U.S.C. § 3553(a)(2)(C).  Indeed, it is safe to say that Mr. Johnson regrets his actions, has learned a costly lesson, and will not reoffend.

Therefore, giving due consideration to the sentencing directives of 18 U.S.C. § 3553(a) and the measure of Mr. Johnson's assistance to the government, the Court should conclude that probation is the most sensible, fair, and just sentence.

## VI.    CONCLUSION

In light of the foregoing circumstances surrounding Mr. Johnson's offense, including his immediate acceptance of responsibility and substantial assistance to the government, Defendant John V. Johnson respectfully requests that the Court depart from the advisory Sentencing Guidelines and impose a sentence of probation.

Respectfully submitted,

/s/ Joshua D. Franklin
Joshua D. Franklin
PESTOTNIK LLP
501 West Broadway, Suite 1025
San Diego, California 92101
(619) 365-9210
Counsel for Defendant John Johnson
(admitted *pro hac vice*)

April 16, 2015

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this date with a copy of the foregoing document via the court's CM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first-class mail on this same date.

      A courtesy copy of the foregoing document has also been served by email to the following recipients:

      Telemachus P. Kasulis, Esq. – *Telemachus.Kasulis@usdoj.gov*

      Sarah E. McCallum, Esq. – *Sarah.McCallum@usdoj.gov*

Executed on April 16, 2015 at San Diego, California.

By:   /s/ Joshua D. Franklin          By:   Joshua D. Franklin
       Signature of Declarant                     Print Name of Declarant